# EXHIBIT A

# PROMISSORY NOTE

Loan Date: May 18, 2016

Principal $30,000.00

Borrower:
JEM Contracting Co., LLC
BWM, LLC
and Elissa Speer, individually
151 Talman Street North
Norwich, CT 06360

SS # 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

FOR VALUE RECEIVED, the undersigned maker(s) JEM Contracting Co., LLC, BWM, LLC and Elissa Speer, promise(s) to pay to the order of DANJON CAPITAL, Inc. ("Lender"), a Nevada Corporation, whose address is 800 N. Rainbow Blvd., Suite 125, Las Vegas, NV 89107 or at such other place as the holder hereof may from time to time designate in writing, in collected funds or U.S. legal tender, the sum specified above as the Face Amount of this Promissory Note, together with interest accrued from the date hereof on the unpaid principal balance at the interest rate or rates per monthly specified below, until paid in full. The undersigned maker(s) also promise(s) to pay (i) late charges, fees, credit insurance premium charges (if any) and other fees and charges as specified herein, and (ii) the cost of all fees paid or to be paid to public officials for recording, perfecting, maintaining, canceling and/or releasing any security interest in any Collateral securing this Promissory Note. Interest is to be accrued on principal, interest and credit insurance premiums are to be paid as follows:

1. **INTEREST RATE and PAYMENT TERMS.** Interest shall be calculated on an "actual/360" daily simple variable interest basis. Unless the default rate described in section 6 below applies, interest shall accrue on the outstanding principal balance:

   a) The principal sum of Thirty Thousand Dollars (U.S. $30,000.00), with interest on the unpaid principal balance from June 1, 2016, until paid, with final payment occurring no later than June 1, 2017.

   b) Principle and interest shall be payable at Chase Bank, N.A. Account of DANJON Capital, Inc., or such other place as Note Holder may designate, in weekly payments for 24 months of One Thousand, Eighteen and 69/100 Dollars (U.S. $1,018.69) (plus taxes), due on the 1st day of each week, beginning May 30, 2016.

2. **NOTE DUE AND PAYABLE:** This note is due and payable prior to June 1, 2017.

3. **FEES.** The fees for this promissory note are deferred to June 1, 2017 and are $ 5,000.00 if this note is not paid off prior to that date.

4. **LATE CHARGE.** There will be a late charge for payments received after the 1st of the week is fifteen percent (15 %) of the unpaid portion of any payment or $ 300.00 whichever is higher.

5. **RETURNED CHECK FEE.** Maker will pay a fifteen percent (15%) or $300.00, whichever is higher, processing fee for each check or other form of remittance given for payment on this Promissory Note that is dishonored or returned unpaid.

6. **INTEREST AFTER DEFAULT.** After an event of default occurs (including failure to pay at Maturity), Lender may, at its option and without notice to any obligor (except for any notice required by applicable law), increase the interest rate on this Promissory Note one or more times to a rate or rates (each a "default rate") to be determined by Lender in its sole discretion. However, (a) the default rate shall never exceed two-percent (2%) per monthly, and (b) Lender will not increase the interest rate to a default if doing so is prohibited by applicable law. If the default is subsequently cured, Lender may, at its option and without notice to any obligor, reduce the interest rate on this Promissory Note to the rate that would have applied had no event of default occurred. To the extent permitted by applicable law, the interest rate provided for in this Promissory Note (including any default rate then in effect) or the legal rate of interest on judgments, whichever greater, shall apply to any indebtedness due following the entry of a judgment relating to the collection of this Promissory Note.

7. Left blank intentionally.

8. **PAYMENTS.**

(A)     This Promissory Note may be prepaid in part or in full at any time without penalty unless (i) section 4 and 17 of this Promissory Note provides for a prepayment penalty, (ii) this Promissory Note is modified, amended or supplemental to provide for a prepayment penalty, or (iii) any loan commitment letter or loan agreement given, received or signed in connection with this loan transaction maker of maker's obligation to continue making payments as and when due under the terms of this Promissory Note. Except as otherwise required by applicable law, all loan fees and other prepaid finance charges are earned fully as of the date of this Promissory Note and will not be subject to refund upon early payment (whether voluntary or as a result of a default).

(B)     Unless otherwise noted, each consecutive payment is due on the same day of the calendar period specified. Credit insurance premiums, if applicable, are due at the same time interest is due.

(C)     Lender shall apply payments to this Promissory Note as of the business day Lender receives U.S. legal tender or collected funds. U.S. legal tender shall be deemed received on the Lender's business day when received. Collected funds shall be deemed received on Lender's business day when cleared or otherwise irrevocably available to Lender. Lender's "business day" shall mean the business day for Lender's transactions between the applicable cut-off times on consecutive banking days.

(D)     Any item delivered to Lender as payment hereunder which is returned or charged back to Lender shall be considered as not having been received by Lender.

(E)     **This Promissory Note is secured by a lien on real property.**  Payments received will be applied in the following order: (i) unpaid credit insurance premiums, if any, accrued to the date of payment or the date payment is due (at Lender's option); (ii) unpaid interest accrued to the date of payment or the date payment or the date payment is due (at Lender's option); and (iii) the unpaid principal balance. If this Promissory Note is secured by a home occupied or to be occupied by the borrower, unpaid late charges, returned check fees, collection costs and other charges due may be satisfied from any payment then due and before the payment is applied to the general reduction of the unpaid principal; otherwise, at Lender's option, they may be satisfied from any payment received either (i) before the application of that payment in the foregoing manner, or (ii) after the application of that payment to the unpaid principal component of any payment then due and before the payment is applied to the general reduction of the unpaid principal balance. If maker fails to make any installment payment within 5 days after it is due, then, in accordance with the foregoing order, subsequent payments received shall be applied first to the past due balance in the order in which the installments were due. Lender may, to the extent permitted by applicable law, impose a separate late charge for each subsequent installment that becomes 5 days or more past due.

(F)     Maker agrees not to send Lender payments marked "Paid in Full," "Without Recourse," or similar language. If maker sends such a payment, Lender may accept it without losing any of Lender's rights under this Promissory Note, and maker will remain obligated to pay any further sums owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: DANJON Capital, Inc. care of the address above.

9.     **WAIVER OF JURY TRIAL; OTHER WAIVERS. To the extent permitted by applicable law, Lender and each obligor voluntarily and knowingly waive the right to a jury trial in any action, proceeding or counterclaim brought by Lender or any obligor against the other or others arising out of or in any way related to this Promissory Note or any related Loan Document.** To the extent permitted by applicable law, each obligor on this Promissory Note (whether maker, accommodation maker, guarantor or endorser) hereby: (a) waives notice of delinquency, notice of default, notice of intent to accelerate, notice of acceleration, demand for payment, presentment for payment, notice of protest, protest, notice of nonpayment, and notice of dishonor; (b) agrees that any extension of time for the payment of this Promissory Note shall not release or reduce the liability of any obligor, and further waives all notice of each such extension; (c) waives the benefits of any statutory or common law provision requiring the discharge or limiting the liability of a surety, and all benefits, claims, rights and defenses based on suretyship or impairment of collateral, including any benefits, claims, right or defenses any obligor may have (i) pursuant to 3419 and      3605 of the California Commercial Code, as amended from time to time, or (ii) arising out of an election of remedies by the Lender, even though that election of remedies, such as a non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed the obligor's right of subrogation and reimbursement against the principal by the operation of 580d of the California Code of Civil Procedure or otherwise; (d) waives any homestead or exemption laws and any rights thereunder affecting the full collection of this Promissory Note; (e) waives the benefits of any legal or equitable doctrine or principle of marshalling; and (f) agrees that none of the following shall release or reduce the liability of any obligor in any manner whatsoever: (i) the release of any one or more of the

obligors or any settlement or compromise with any one or more of the obligors with respect to this Promissory Note, any Security Instrument or any of the other Loan Documents; (ii) the taking or compromise, modification, substitution, exchange, impairment, waiver, release or surrender of any Collateral or Security Instrument taken as security for this Promissory Note or for performance under any Security Instrument or any of the other Loan Documents; or (iii) the amendment, modification, extension, renewal, increase, or consolidation of this Promissory Note, any Security Instrument or any of the other Loan Documents, and each obligor waives notice of each such release, settlement, compromise, taking, substitution, exchange, impairment, waiver, surrender, amendment, modification, extension, renewal, increase, or consolidation. Lender shall have no duty whatsoever to monitor or verify the use of the proceeds of this Promissory Note or to ensure or verify that any loan proceeds are used for the purpose described in any of the Loan Documents. Each obligor hereby waives and agrees not to assert against Lender any claim or defense whatsoever based on (a) the actual use of loan proceeds, (b) the failure of any loan proceeds to be used for any purpose describe in any of the Loan Documents and/or (c) Lender's knowledge that loan proceeds were not used for the purpose described in any of the Loan Documents. Lender may delay or forego enforcing any of its rights or remedies under this Promissory Note without being deemed to have waived or forfeited such rights.

10.   **EVENTS OF DEFAULT.** This Promissory Note, each Security Instrument and the other Loan Documents shall be in default upon the happening of any of the following "events of default":

   (a)   Any payment is not made as and when due according to the terms of this Promissory Note;

   (b)   Default in the performance of any obligation, covenant or condition contained in, or the occurrence of any other event of default under, this Promissory Note, any Security Instrument or any of the other Loan Documents.

   (c)   Default by any obligor under any other Promissory Note, obligation or indebtedness owed to Lender (whether such Promissory Note, obligation or indebtedness now exists or is hereafter made), or default in any obligation or instrument securing any such Promissory Note, obligation or indebtedness;

   (d)   Any warranty, representation or statement made or furnished to Lender by or on behalf of any maker or guarantor in connection with this loan transaction, property sale, or to induce Lender to make this loan, is false or misleading in any material respect either now or at the time made or furnished;

   (e)   The death, dissolution, business failure, liquidation, or termination of existence of any make or guarantor;

   (f)   The corporate or legal existence of any maker or guarantor is terminated or suspended, or any maker or guarantor fails to maintain its corporate or legal existence in good standing.

   (g)   Any guarantor disputes the validity of, or guarantor's liability under, any guaranty of this Promissory Note, or any guarantor revokes or attempts to revoke the guarantor's prospective liability under any guaranty of this Promissory Note for future advances or obligations;

   (h)   The sale, transfer or conveyance without Lender's prior written consent of more than 10% of the voting stock, partnership interests or limited liability company interests, as the case may be, of any maker or guarantor that is a corporation, partnership, limited partnership or limited liability company;

   (i)   Any voluntary or involuntary bankruptcy, reorganization, insolvency proceeding, receivership, or other similar proceeding is commenced by or against any maker or guarantor as debtor under any federal or state law, or any maker or guarantor becomes insolvent, makes any assignment for the benefit of creditors, or conveys substantially all of its assets;

   (j)   The entry of any final monetary judgment or the assessment and/or filing of any tax lien against any maker or guarantor that is not satisfied, released or discharged within 30 days of entry.

   (k)   The issuance of any writ of garnishment, attachment, levy, seizure order, or forfeiture order against any property of, debts due, or rights of any maker or guarantor, including the commencement of any action or proceeding to seize monies of any maker or guarantor on deposit in any account with Lender; or

   (l)   Lender in good faith believes that the prospect of timely payment or other performances by any maker or guarantor is impaired or Lender otherwise in good faith deems itself or its collateral insecure.

   If an event of default occurs, Lender shall not be further obligated to advance loan proceeds.

11.   **NOTICE OF DEFAULT AND RIGHT TO CURE; ACCELERATION.** If an event of default occurs, Lender shall give such notice of _____ default and opportunity to cure as is required by California Law. If (a) an event of default occurs and maker is not entitled to notice of default and the opportunity to cure, or (b) an event of default occurs and the default is not cured during any applicable cure period following the giving of any required notice of default, then this Promissory Note shall, at Lender's option, become due and payable in full without demand or notice of any kind. In addition, if Lender has the right to accelerate this Promissory Note under the provisions of any Security Instrument as a result of Collateral being sold, transferred, conveyed or encumbered, Lender shall not be further

obligated to advance loan proceeds and this Promissory Note shall, at Lender's option and following the giving of any required notice and opportunity to cure, become due and payable in full without demand or notice of any kind. Lender's failure to exercise any of the foregoing options shall not constitute a waiver of any other default or right to exercise such options. Waiver by Lender of any default or right to accelerate shall not operate as a waiver of any other default or right to accelerate or of the same default or right to accelerate on a future occasion. Except to the extent California law permits a default to be cured and the obligation evidenced by this Promissory Note reinstated as though not acceleration had occurred, acceptance by Lender of payment of less than the entire unpaid balance after acceleration    of this Promissory Note shall not cure a default or waive an acceleration, and Lender shall be entitled to proceed with its rights and remedies as Promissory Note holder (and as secured party, if applicable). If an event of default occurs or this Promissory Note is accelerated, interest and credit life insurance premium charges, if any, shall continue to accrue on the unpaid balance.

12.    **COSTS AND EXPENSES.** If any lawsuit, reference or arbitration is commenced which arises out of or is related to this Promissory Note or any of the Loan Documents, the prevailing party or parties shall be entitled to recover from the other party or parties such sums as the court, referee or arbitrator may adjudge to be reasonable attorneys' fees (including allocated costs of services of in-house counsel) in the action or proceeding, in addition to costs and expenses otherwise allowed by law. In all other situations, including any bankruptcy or insolvency proceeding, maker agrees to pay all of Lenders' costs and expenses, including reasonable attorney's fees (including allocated costs for services of Lender's in-house counsel) which may be incurred in any effort to collect or enforce this Promissory Note or any of the Loan Documents. In addition, maker agrees to pay all of Lender's expenses to (i) trace and/or locate any obligor; (ii) collect this Promissory Note in whole or in part and, where applicable, reinstate the loan; (iii) trace, locate, recover, repossess, transport, store, hold, and assess any Collateral (including environmental assessments and appraisal expenses); and (iv) protect the Collateral and Lender's interest in the Collateral including the cost of any bonds. Costs and expenses recoverable by Lender under this section shall include sums that may not be taxable as court costs, including, without limitation, all costs and expenses incident to appellate, bankruptcy, post-judgment and alternative dispute resolution proceedings. Maker shall be liable for the payment of all such costs and expenses as an additional obligation under this Promissory Note. All such costs and expenses shall be due and payable to Lender immediately upon Lender's payment of the same, may be added to the principal balance due and, to the extent permitted by law, shall bear interest at the rate specified in this Promissory Note. The repayment of such costs and expenses shall be secured by all Collateral and by each Security Instrument. Lender shall have no duty to release Collateral until such costs and expenses, in addition to all other obligations secured by the Collateral, are paid in full.

13.    **COMPOUND INTEREST; INTEREST CALCULATION METHOD.** Accrued but unpaid interest may be added to the outstanding principal balance and accrue interest at the then current rate of interest due under this Promissory Note from time to time. Interest on an "actual/360" daily simple interest basis is determined by applying the ration of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.

14.    **MISCELLANEOUS.** This Promissory Note shall be the joint and several obligation of each maker. The proceeds of this Promissory Note shall be used solely for business, commercial or agricultural purposes and not for any personal, family or household use. Lender may delay or forego enforcing any of its rights or remedies under this Promissory Note without being deemed to have waived or forfeited them. No waivers or modifications of the terms of this Promissory Note shall be valid unless they are reduced to writing and duly executed by the party to be charge therewith. This Promissory Note is subject to the provisions of each loan commitment letter and loan agreement given, received or signed in connection with this loan transaction, the terms and conditions of which are incorporated herein by reference. If the terms of any such commitment letter or loan agreement conflict with the terms of this binding upon each obligor and their respective heirs, executors, administrators, successors and assigns, and shall inure to the benefit of and be enforceable by Lender and its successors, transferees, an assigns. This Promissory Note and all guaranties and endorsements of this Promissory Note have been entered into in the State of California and shall be deemed to have been made under and shall be governed by federal law and, except to the extent preempted by federal law, by the laws of the State of California in all respects, including matters of construction, validity and performance. Any action, suit or proceeding relating to this Promissory Note or any guaranty or endorsement of this Promissory Note may be instituted and prosecuted in the state or federal courts of the State of California, and each obligor waives any and all defenses relating to the jurisdiction and venue of such courts. Any photocopy, microfilm, microfiche or optical image of this Promissory Note may be presented as evidence in lieu of the original in any legal proceeding to enforce the terms of this Promissory Note and shall have the same validity as the original.



15. **DEFINITION OF TERMS.** As used herein, (a) "maker" means each maker who signs this Promissory Note, jointly and severally commonly known as borrower; (b) "guarantor" means each guarantor who guarantees the payment of all or any portion of this Promissory Note; (c) "obligor" means each maker, guarantor, endorser, and surety of all or any portion of this Promissory Note; (d) this "Promissory Note" refers to this instrument and to the indebtedness evidenced by this instrument; (e) "Security Instrument" includes each and every pledge, assignment, security agreement, guaranty, mortgage, deed to secure debt, deed of trust, hypothecation, or other security instrument or arrangement given to secure repayment of all or any portion of this Promissory Note or performance under any of the Loan Documents, whether now existing or hereafter arising; (f) "Collateral" means any collateral that secures repayment of this Promissory Note; (g) "Loan Documents" included all documents executed and delivered in connection with the loan transaction evidenced by this Promissory Note (including this Promissory Note, each Security Instrument, any loan commitment letters, any loan agreements and all loan application documents), whether now existing or hereafter arising; and (h) "Lender" means A1B2, LLC Bank and its successors and assigns. The terms "Promissory Note" "Security Instrument" and "Loan Documents" include all amendments, modification, extensions and renewals thereof. Of the terms of any of the Loan Documents conflict with the terms of this Promissory Note, the terms of this Promissory Note shall control.

16. **DUE ON SALE PROVISION IN DEED OF TRUST.** This Promissory Note is secured, at least in part, by a deed of trust on California real property. The deed of trust contains the following "due on sale" provision:

**Important: Do not sign this form until you read it, and carefully and understand its content**

BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ, RECEIVED AND UNDERSTAND THIS HAZARD INSURANCE DISCLOSURE.

By: JEM Contracting Co., LLC and BWM, LLC


_Elissa Speer_
Elissa Speer (Unmarried)- Borrower


STATE OF CONNECTICUT
COUNTY OF _ALL CT_


On _05-19-2016_, before me, _Elissa Speer Member_, personally
(Date)                (Name, Title of the Officer)
appeared _Elissa Speer_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Connecticut that the foregoing is true and correct.

WITNESS my hand and official seal.

Signature _____(Seal)

_Ex: 08/31/2030_

# EXHIBIT A

INSTR # 2016002213
OR BK 2960 PG 312
RECORDED 05/26/2016   11:29:30 AM
BETSY M. BARRETT
TOWN CLERK
NORWICH, CT.

After Recording Return To:
DANJON Capital, Inc.
800 N. Rainbow Blvd., Suite 125
Las Vegas, NV  89107
Attn:  Tina Hampton

_____ **[Space Above This Line For Recording Data]** _____

## OPEN-END MORTGAGE DEED

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)  "Security Instrument"** means this document, which is dated May 18, 2016, together with all Riders to this document.

**(B)  "Borrower"** is JEM Contracting Co., LLC, BWM, LLC and Elissa Speer.  Borrower is the mortgagor under this Security Instrument.

**(C)  "Lender"** is DANJON Capital, Inc.  Lender is a corporation organized and existing under the laws of Nevada. Lender's address is 800 N. Rainbow Blvd., Suite 125, Las Vegas, NV  89107. Lender is the mortgagee under this Security Instrument.

**(D)  "Note"** means the promissory note signed by Borrower and dated May 18, 2016.  The Note states that Borrower owes Lender Thirty Thousand Dollars (U.S. $30,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than June 1, 2017.

**(E)  "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(F)  "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G)  "Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Other(s) [specify]_____ |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

**(H)  "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower in consideration of this debt does hereby grant and convey to Lender and Lender's successors and assigns, the following described property located in the County of New London:

A certain tract or parcel of land with the buildings and improvements thereon, situated on the westerly side of McKinley Avenue in the Town of Norwich, County of New London and State of Connecticut and known as 108-110 McKinley Avenue bounded and described as follows:

Beginning at the northeasterly end of a cement wall on the south-westerly side of said Avenue at the northerly corner of land now or formerly of William B. Disco and running thence southwesterly by the northwesterly face of said wall 136.80 feet to land now or formerly of Susan Jensen abutting

southwesterly on said Disco land; thence deflecting 99 degrees to the right and running 40.20 feet abutting southwesterly on said Jensen land, thence deflecting 81 degrees to the right and running 130.50 feet to McKinley Avenue, abutting northwesterly on land now or formerly of John W. Brassil, thence southeasterly by the southwesterly side of said Avenue 40.70 feet to the place of beginning.

Subject to a drainage assessment to the City of Norwich from William L. Bell dated February 29, 1940 and recorded in Volume 216, Page 8 of Norwich Land Records.

which currently has the address of 110 McKinley Avenue, Norwich, Connecticut 06360 ("Property Address"):

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or

prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.

Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are

pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was

required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to

pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with

the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in court the non-existence of a default or any other defense of Borrower to acceleration and foreclosure or sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

**25. Future Advances.** Lender is specifically permitted, at its option and in its discretion, to make additional loans and future advances under this Security Instrument as contemplated by Section 49-2(c) of the Connecticut General Statutes, and shall have all rights, powers and protections allowed thereunder.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

By: JEM Contracting Co., LLC and BWM, LLC

_Elissa Speer_

Elissa Speer (Unmarried)- Borrower

STATE OF CONNECTICUT
COUNTY OF _____ C7 . N.L._____

On __05/19/2014.__, before me, _____Elissa Speer (member)_____, personally
       (Date)                        (Name, Title of the Officer)
appeared _Elissa Speer_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Connecticut that the foregoing is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

EX:
08/31/2020     [Space Below This Line For Acknowledgment] _____