# EXHIBIT D

DocuSign Envelope ID: 04C3695E-D470-4FC0-BC8F-3A899BCBC4C1

SUPERIOR COURT J.D. OF NEW LONDON

AT NEW LONDON

WORLD BUSINESS LENDERS, LLC

v.

526-528 NORTH MAIN STREET, LLC and
ELISSA E. SPEER

No. KNL-CV16-6028224-S

DECLARATION OF MICHAEL YATSKO IN
SUPPORT OF MOTION FOR JUDGMENT

I, MICHAEL YATSKO, declare as follows:

1.      I am over the age of 18 years, and make this declaration based on my own personal knowledge. If called upon to do so, I could and would competently testify under oath to the matters set forth herein.

2.      I am employed by DocuSign, Inc. I am a Senior Director, Compliance and have held this position since December 1, 2017. I have been employed by DocuSign since July 7, 2014. In this position, I have personal knowledge of the DocuSign System described below.

3.      The following description of DocuSign System procedures applies to persons or entities who utilized the DocuSign System in 2015 through the date of this Declaration.

Page 1

DECLARATION OF MICHAEL YATSKO IN SUPPORT OF MOTION FOR JUDGMENT

DocuSign Envelope ID: 04C3695E-D470-4FC0-BC8F-3A899BCBC4C1

4.    The DocuSign System enables: (1) a document author or originator, via the DocuSign user interface ("Sender"), to present documents to an intended recipient ("Signer") over the Internet for electronic delivery and/or signature (the "eSigning Process"); and (2) the Signer's and Sender's ability to retain a copy of the delivered or signed documents.

5.    A "Subscriber" is a person or entity who has paid for the DocuSign service and created an Account. Upon creation of an Account, the Subscriber must register at least one person as an "Administrative User." An Administrative User may log on to the System and access the Account administration tools. Using these tools, the Administrative User can, among other things, be a Sender.

6.    The eSigning Process is initiated by inviting one or more Signers to review and/or sign the document. When inviting more than one Signer, the Sender can allow them to review and/or sign concurrently or set a sequential order in which Signers must access and sign documents. Where a sequential order is set, the first Signer must complete his or her required interaction with the document before a subsequent Signer receives an invitation to review and/or sign. For remote systems, a Sender, through the System, emails to a Signer to let the Signer(s) know that a Document is ready to be reviewed and/or signed. To proceed to review and sign, the Signer must click a link or a button labeled "Review Document," which links the Signer to the System.

7.    An important feature of the System is the ability to add Signer authentication to an Envelope. The "Envelope" is the electronic file comprising one or more digital documents that are uploaded by the Sender for the Signer to electronically sign. Signer authentication is a way to require email recipients to verify their identity before they can access an Envelope. The System provides several authentication methods, and allows one or more authentication options to be selected for each Signer. The method of Signer authentication is at the election of the Sender. For any authentication option selected by the Sender, the Signer must proceed through the authentication procedures to proceed with the eSigning Process. A Signer can be required to complete a knowledge-based authentication process operated by a third-party service, LexisNexis ("ID Check"). ID Check provides real-time identity verification and authentication solutions that utilize public records to uniquely validate and confirm a Signer's identity.  Complex algorithms compare public record searches and build sophisticated questions

DECLARATION OF MICHAEL YATSKO IN SUPPORT OF MOTION FOR JUDGMENT

DocuSign Envelope ID: 04C3695E-D470-4FC0-BC8F-3A899BCBC4C1

1  based on the relationships among the data.  The System provides the ability for the Sender to configure
2  the rules for the ID Check procedures.  DocuSign does not determine the questions asked, or have access
3  to the answers provided in connection with ID Check.  Rather, the DocuSign System only receives a
4  notification from ID Check regarding whether the individual successfully completed the process, and a
5  summary of the information provided.

6      8.      The Signer may sign in through any one of several web browsers, such as Internet
7  Explorer, Chrome, Firefox or Safari.

8      9.      To proceed with the eSigning Process, the Signer may be required by the Sender to first
9  agree to an electronic consumer consent and disclosure statement, in which case the Signer must indicate
10 his/her consent by ticking a checkbox next to a statement that the Signer consents to use electronic
11 records and signatures. This statement is presented as a hyperlink, which permits Signers to access the
12 Electronic Record and Signature Disclosure ("ERSD"). The ERSD is provided in HTML format. The
13 contents of the ERSD can be customized by each Sender and may be set as the DocuSign Model ERSD,
14 as customized text used for all Signers, or made specific to each Signer. The Signer cannot proceed with
15 the eSigning Process unless he or she agrees to the ERSD by checking the box.

16     10.     Once the Signer is ready to review and/or sign and has accepted the ERSD, the System
17 presents the contents of the Envelope (the documents) on the Signer's computer screen in PNG format.
18 A printer-friendly version of the documents is also available for download as a PDF anytime during the
19 eSigning Process.

20     11.     Once presented with the documents, the Signer may self-navigate through the documents
21 within the Envelope using the native navigation tools (e.g. scroll bars) of the browser, or, at the Sender's
22 option, be automatically moved to the first location where a signature, initial, or other information is
23 required, by clicking the "Next" button on the left side of the document. The Signer is then shown a
24 representation of a tab with the words "Sign" or "Initial," in each location within the document that the
25 Signer must sign. The first time the Signer clicks on a tab, the Signer's name and initials are presented
26 on the screen in several pre-defined fonts and sizes from which the Signer may choose. In addition to the
27 Signer's name and initials, a Globally Unique Identifier ("GUID") (which is a series of numbers and

28

DECLARATION OF MICHAEL YATSKO IN SUPPORT OF MOTION FOR JUDGMENT

DocuSign Envelope ID: 04C3695E-D470-4FC0-BC8F-3A899BCBC4C1

1  letters that is unique to the individual signing) is assigned to the Signer, and appears as part of the

2  graphic representation of the electronic signature. The GUID is noted in a secured record maintained by

3  DocuSign. In addition, the screen also states a message that the Signer agrees that his or her signature

4  and initials will be the electronic representation of his or her signature for all purposes, including legally

5  binding contracts—just the same as a pen-and-paper signature or initial. The Signer adopts the electronic

6  signature by clicking on a button labeled "Adopt and Sign."

7     12.  Signer then clicks on a tab, which applies the Signer's electronic signature or initial to the

8  document, and the GUID will appear on the documents once signed. Each time the document is signed

9  or initialed, the graphic representation of the Signer's adopted electronic signature appears on the

10  document.

11     13.  After all required information is added and signature and initial tabs have been clicked,

12  the screen displays a box at the bottom of the screen letting the Signer know that he or she is done

13  signing, and provides the Signer with a button to "Finish." The box also contains an "Other Actions"

14  button.

15     14.  If the Signer clicks the "Other Actions" button, the Signer can review and print the

16  Envelope documents which will include the graphic representation of his or her signature on the

17  documents. The Signer may also cancel the transaction at this point in the eSigning Process. If the Signer

18  clicks the "Finish" button, the Signer's signatures and/or initials apply to the PDF file of the document.

19  Once the "Finish" button is clicked, the System then generates a hash based on the industry-standard

20  SHA-1 (Secure Hash Algorithm 1) algorithm. Finally, the eSigning Process is considered final and the

21  System records the date and time in the transaction log.

22     15.  The Signer is provided with an opportunity to print or download the signed documents

23  and related signing information, or the Signer may open an account with DocuSign to access the

24  documents online and use his or her adopted signature in future DocuSign transactions. The signed

25  documents are provided in PDF for printing or downloading. Once signed, the System notifies the

26  Sender that the Signer has completed the eSigning Process and the Sender may then access the Sender's

27  account with DocuSign to review the executed documents.

28

DECLARATION OF MICHAEL YATSKO IN SUPPORT OF MOTION FOR JUDGMENT

DocuSign Envelope ID: 04C3695E-D470-4FC0-BC8F-3A899BCBC4C1

16.     The GUID information on the Signer, the Envelope and the documents are maintained by the System in the Certificate of Completion and Envelope History. In addition, the Certificate of Completion also contains a summary about the Envelope, that generally includes a record of the Envelope GUID, the originator of the Envelope, and the Signers of the documents contained in the Envelope and their signatures, including a GUID, date and time stamps of the signatures, and document status such as indication of signature completion. The information contained on the Certificates of Completion may vary based on the account settings that the Administrative User has selected for the Certificates of Completion.

17.     DocuSign maintains electronic copies of the Certificates of Completion in the System as part of its ordinary course of business. I have access to the Certificates of Completion as part of my regular job duties.

18.     World Business Lenders, LLC was a Subscriber of DocuSign from 7/15/2014 until present and utilizes the DocuSign System to present documents to Signers over the Internet for electronic delivery and signature.

19.     Attached as Exhibit A is a true and correct copy of the Certificate of Completion for Signer, "Elissa E. Speer" regarding the eSigning of an envelope titled, "Per WBL Loan - Docusign JEM Contracting Co LLC".  Attached as Exhibit B is a true and correct copy the Envelope History for the same transaction.

20.     The Certificate of Completion lists "WBL Closing" as the "Envelope Originator." This means that the account of WBL Closing was the Sender of the Envelope containing the document to be electronically signed. The Certificate of Completion shows "Envelope Number" as "1742A228240D499DB3DE3C9B909CDF32" which is a unique number to the particular set of digital documents contained in this Envelope. WBL Closing sent the envelope from the email address "closing@wbl.com" from an IP Address reported as 38.109.103.250.

21.     The Certificate of Completion has the email address "speercommercial@gmail.com" under the name, "Elissa E. Speer." This means that speercommercial@gmail.com was the email address selected for the eSigning Process for Elissa E. Speer.

Page 5

DECLARATION OF MICHAEL YATSKO IN SUPPORT OF MOTION FOR JUDGMENT

DocuSign Envelope ID: 04C3695E-D470-4FC0-BC8F-3A899BCBC4C1

22.     The Certificate of Completion describes the "Security Level" for Elissa E. Speer as both "Email" and "ID Check".   This means that the System required the Signer to have access to the email address speercommercial@gmail.com and to pass a LexisNexis ID Check to verify the Signer's identity before the Envelope could be accessed regarding the eSigning Process.

Below is the sequence of events as indicated in the Certificate of Completion attached as Exhibit A:

- The Sender, WBL Closing at closing@wbl.com, sent an email with the link to the Envelope containing documents to be electronically signed to the email address speercommercial@gmail.com on 4/26/2016 at 12:02 PM (PDT).
- The Signer, Elissa E. Speer at speercommercial@gmail.com had access to that email address and clicked the link in the email from an IP address registered as 73.249.60.16.
- The Signer then performed and successfully passed an ID Check transaction 11020864163643, on 4/26/2016 at 7:42 PM (GMT) in which the Signer provided the correct responses to five (5) out of six (6) questions presented.
- After successfully passing both authentication checks, the Signer agreed to the terms and conditions of the "Electronic Record and Signature Disclosure" (ERSD) provided during the eSigning Process on 4/26/2016 at 12:42 PM (PDT) which is required in order to view the document in the Envelope.
- The Signer then viewed the Envelope on 4/26/2016 at 12:42 PM (PDT).
- The Signer then completed the eSigning Process by electronically signing the document contained in the Envelope on 4/26/2016 at 12:47 PM (PDT).
- Note: The Certificate of Completion also states "Account Authentication (None)" under "Security Level." This means that the Sender did not require the Signer to create and use a DocuSign account as one of the options for authenticating this Signer. It does not mean that the System did not authenticate Elissa E. Speer's identity before the Envelope could be accessed regarding the eSigning Process.
- Note: This envelope was sent and signed on 4/26/2016 which is Pacific Daylight Time (PDT). There is a 07:00 hour time zone difference with Greenwich Mean Time (GMT) rather than the (UTC-08:00) Pacific Time (US & Canada) indicated for Time Zone field for Pacific Standard Time (PST).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DECLARATION OF MICHAEL YATSKO IN SUPPORT OF MOTION FOR JUDGMENT

DocuSign Envelope ID: 04C3695E-D470-4FC0-BC8F-3A899BCBC4C1

Executed on ____February 22, 2018____ in the City and County of San Francisco, California.

DocuSigned by:

*Michael Yatsko*

MICHAEL YATSKO

DECLARATION OF MICHAEL YATSKO IN SUPPORT OF MOTION FOR JUDGMENT

DocuSign Envelope ID: 04C3695E-D470-4FC0-BC8F-3A899BCBC4C1

DocuSign.
⊡ SECURED

## Certificate Of Completion

Envelope Id: 1742A228240D499DB3DE3C9B909CDF32                    Status: Completed
Subject: Per WBL Loan - Docusign JEM Contracting Co LLC
Source Envelope:
Document Pages: 28              Signatures: 13                    Envelope Originator:
Certificate Pages: 4            Initials: 0                       WBL Closing
AutoNav: Enabled                                                 120 W 45th St Fl 29
Enveloped Stamping: Enabled                                      New York, NY  10036
Time Zone: (UTC-08:00) Pacific Time (US & Canada)                closing@wbl.com
                                                                 IP Address: 38.109.103.250

## Record Tracking

Status: Original                Holder: WBL Closing              Location: DocuSign
       4/26/2016 11:55:40 AM           closing@wbl.com

## Signer Events                Signature                        Timestamp

Elissa E Speer                  *[signature: Elissa E Speer]*    Sent: 4/26/2016 12:02:25 PM
speercommercial@gmail.com                                        Viewed: 4/26/2016 12:42:51 PM
speer real estate               7A904517782447F...               Signed: 4/26/2016 12:47:34 PM
Security Level: Email, Account Authentication
(None), Authentication          Using IP Address: 73.249.60.16

**Authentication Details**
ID Check:

Transaction: 11020864163643                    Question Details:
   Result: passed                              passed  property.county.real
   Vendor ID: LexisNexis                       passed  person.age.real
   Type: iAuth                                 passed  property.association.single.real
   Recipient Name Provided by: Recipient       passed  property.association.single.real
   Information Provided for ID Check: Address,  failed  property.association.single.real
   SSN9, SSN4, DOB                             passed  domainname.association.fake
   Performed: 4/26/2016 7:42:44 PM GMT
Electronic Record and Signature Disclosure:
   Accepted: 4/26/2016 12:42:51 PM
   ID: ed1818fe-da43-4453-bbf7-6fc8c73be19e

## In Person Signer Events      Signature                        Timestamp

## Editor Delivery Events        Status                           Timestamp

## Agent Delivery Events         Status                           Timestamp

## Intermediary Delivery Events  Status                           Timestamp

## Certified Delivery Events     Status                           Timestamp

## Carbon Copy Events            Status                           Timestamp

## Notary Events                                                  Timestamp

## Envelope Summary Events       Status                           Timestamps

Envelope Sent          Hashed/Encrypted         4/26/2016 12:02:25 PM
Certified Delivered    Security Checked         4/26/2016 12:42:51 PM
Signing Complete       Security Checked         4/26/2016 12:47:34 PM
Completed              Security Checked         4/26/2016 12:47:34 PM

## Electronic Record and Signature Disclosure

DocuSign Envelope ID: 04C3695E-D470-4FC0-BC8F-3A899BCBC4C1
Electronic Record and Signature Disclosure created on: 8/12/2013 1:40:27 PM
Parties agreed to: Elissa E Speer

## CONSUMER DISCLOSURE

From time to time, World Business Lenders (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign, Inc. (DocuSign) electronic signing system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the â€˜I agreeâ€™ button at the bottom of this document.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after signing session and, if you elect to create a DocuSign signer account, you may access them for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign â€˜Withdraw Consentâ€™ form on the signing page of a DocuSign envelope instead of signing it. This will indicate to us that you have withdrawn your consent to receive required notices and disclosures electronically from us and you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures

DocuSign Envelope ID: 04C3695E-D470-4FC0-BC8F-3A899BCBC4C1

electronically from us.

**How to contact World Business Lenders:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:

To contact us by email send messages to: ejohnson@wbl.com

**To advise World Business Lenders of your new e-mail address**

To let us know of a change in your e-mail address where we should send notices and disclosures electronically to you, you must send an email message to us at ejohnson@wbl.com and in the body of such request you must state: your previous e-mail address; your new e-mail address. We do not require any other information from you to change your email address..

In addition, you must notify DocuSign, Inc. to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in the DocuSign system.

**To request paper copies from World Business Lenders**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an e-mail to ejohnson@wbl.com and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with World Business Lenders**

To inform us that you no longer want to receive future notices and disclosures in electronic format you may:

  i. decline to sign a document from within your DocuSign session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;
  ii. send us an e-mail to ejohnson@wbl.com and in the body of such request you must state your e-mail, full name; US Postal Address; and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

| Operating Systems: | WindowsÂ® 2000, WindowsÂ® XP, Windows VistaÂ®; Mac OSÂ® X |
|---|---|
| Browsers: | Final release versions of Internet ExplorerÂ® 6.0 or above (Windows only); Mozilla Firefox 2.0 or above (Windows and Mac); Safariâ„¢ 3.0 or above (Mac only) |
| PDF Reader: | AcrobatÂ® or similar software may be required to view and print PDF files |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | Allow per session cookies |

\*\* These minimum requirements are subject to change. If these requirements change, you will be asked to re-accept the disclosure. Pre-release (e.g. beta) versions of operating systems and browsers are not supported.

**Acknowledging your access and consent to receive materials electronically**

To confirm to us that you can access this information electronically, which will be similar to

DocuSign Envelope ID: 04C3695E-D470-4FC0-BC8F-3A899BCBC4C1

other electronic notices and disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the â€˜I agreeâ€™ button below.

By checking the â€˜I agreeâ€™ box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC CONSUMER DISCLOSURES document; and

- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and

- Until or unless I notify World Business Lenders as described above, I consent to receive from exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to me by World Business Lenders during the course of my relationship with you.

DocuSign Envelope ID: 04C3695E-D470-4F00-BC8F-3A899BC6BC4C1

| Date | Time | Source | User | Action | Message | Status | User/IP | Additional | Language |
|---|---|---|---|---|---|---|---|---|---|
| 4/26/2016 19:55 | 4/26/2016 19:55 | Web | WBL Closing | Registered | The envelope was created by WBL Closing | Created | 38.109.103.250 | | English (US) |
| 4/26/2016 19:02 | 4/26/2016 19:02 | Web | WBL Closing | Sent Invitations | WBL Closing sent an invitation to Elissa E Speer (spbercommercial@gmail.com) | Sent | 19.102.40.15 | Elissa E Speer (spbercommercial@gmail.com) | English (US) |
| | | | | | | | | 9ec55f0d295a!LexisNexis[4/26/2016 7:42:44 PM GMT] <?xml version="1.0" encoding="utf-8"?> <transactionresponsetype xmlns:xsd="http://www.w3.org/2001/XMLSchema" xmlns:xsi="http://www.w3.org/2001/XMLSchema-instance"> <resulrspassed>c/result> <transactionnumber> 1102086 4163643</transactionnumber> <sequencenumber>9</sequence number> <accounttransactionid> 1742a228-240d-499d-b3de-3c9b990gd!3z/accounttransactionid> <verbosedetails> <information> <formattype> <code>textquestiondetails</code> <simpledetail/> <complexdetail> <complexdetailtype> <heading> questionset.set number:</heading> <simpledetail> <simpledetailtype> <text>1</text></simpledetail></simpledetailtype> <complexdetail/> <complexdetailtype> <complexdetail> <heading> questionset.question</heading> <complexdetail> <complexdetailtype> <heading> questionset.question.type </heading> <simpledetail> <simple detailtype> <text>property.county.real</text> </simpledetailtype> </simpledetail> <complexdetail/> </complexdetailtype> <complexdetail> <heading> questionset.question.outcome</heading> <simpledetail> <simpledetailtype> <text> passed</text></simpledetailtype> </simpledetail> <comple xdetail/> </complexdetailtype> </complexdetail> </complexdetailtype> </complexdetail> <complexdetailtype> <heading> questionset.questions</heading> <co mplexdetail> <complexdetailtype> <heading> questionset.questio n.type</heading> <simpledetail> <simpledetailtype> <text>person | English (US) |
| 4/26/2016 19:42 | 4/26/2016 19:42 | Web | Elissa E Speer | ID Check Passed | Passed ID Check for Elissa E Speer | Sent | 73.249.60.16 | Elissa E Speer viewed the envelope (documents:(Conditional Closing Agreement.pdf, unsigned loan docs.pdf; Flood Cert_526-528 N Main St.pdf; WBL_BLM Application Final_JEM Contracting.pdf; WBL_BLM Application Final_526-528 North Main St.pdf)) | English (US) |
| 4/26/2016 19:42 | 4/26/2016 19:42 | Web | Elissa E Speer | Viewed | Elissa E Speer viewed the envelope (documents:(Conditional Closing Agreement.pdf, unsigned loan docs.pdf; Flood Cert_526-528 N Main St.pdf; WBL_BLM Application Final_JEM Contracting.pdf; WBL_BLM Application Final_526-528 North Main St.pdf)) | Delivered | 73.249.60.16 | | English (US) |
| 4/26/2016 19:47 | 4/26/2016 19:47 | Web | Elissa E Speer | Signed | Elissa E Speer signed the envelope | Completed | 73.249.60.16 | | English (US) |
| 4/26/2016 19:52 | 4/26/2016 19:52 | API | sheri speer . | Printable Copy Del | sheri speer received a printable copy of the envelope | Completed | 73.249.60.16 | | English (US) |
| 4/26/2016 20:04 | 4/26/2016 20:04 | Web | WBL Closing | Viewed | WBL Closing viewed the envelope (documents:(Conditional Closing Agreement.pdf, unsigned loan docs.pdf; Flood Cert_526-528 N Main St.pdf; WBL_BLM Application Final_JEM Contracting.pdf; WBL_BLM Application Final_526-528 North Main St.pdf)) | Completed | 38.109.103.250 | WBL Closing viewed the envelope (documents:(Conditional Closing Agreement.pdf, unsigned loan docs.pdf; Flood Cert_526-528 N Main St.pdf; WBL_BLM Application Final_JEM Contracting.pdf; WBL_BLM Application Final_526-528 North Main St.pdf)) | English (US) |
| 4/26/2016 20:05 | 4/26/2016 20:05 | Web | WBL Closing | Printable Copy Del | WBL Closing received a printable copy of the envelope | Completed | 38.109.103.250 | | English (US) |
| 4/26/2016 20:08 | 4/26/2016 20:08 | Web | WBL Closing | Viewed | WBL Closing viewed the envelope (documents:(Conditional Closing Agreement.pdf, unsigned loan docs.pdf; Flood Cert_526-528 N Main St.pdf; WBL_BLM Application Final_JEM Contracting.pdf; WBL_BLM Application Final_526-528 North Main St.pdf)) | Completed | 38.109.103.250 | WBL Closing viewed the envelope (documents:(Conditional Closing Agreement.pdf, unsigned loan docs.pdf; Flood Cert_526-528 N Main St.pdf; WBL_BLM Application Final_JEM Contracting.pdf; WBL_BLM Application Final_526-528 North Main St.pdf)) | English (US) |
| 4/26/2016 20:08 | 4/26/2016 20:08 | Web | WBL Closing | Printable Copy Del | WBL Closing received a printable copy of document 6128367-7573-4d18-9366-39200f261a9b (Summary) | Completed | 38.109.103.250 | | English (US) |
| 4/27/2016 19:02 | 4/27/2016 19:02 | Web | WBL Closing | Viewed | WBL Closing viewed the envelope (documents:(Conditional Closing Agreement.pdf, unsigned loan docs.pdf; Flood Cert_526-528 N Main St.pdf; WBL_BLM Application Final_JEM Contracting.pdf; WBL_BLM Application Final_526-528 North Main St.pdf)) | Completed | 38.109.103.250 | WBL Closing viewed the envelope (documents:(Conditional Closing Agreement.pdf, unsigned loan docs.pdf; Flood Cert_526-528 N Main St.pdf; WBL_BLM Application Final_JEM Contracting.pdf; WBL_BLM Application Final_526-528 North Main St.pdf)) | English (US) |

DocuSign Envelope ID: 1742A228-240D-499D-᠁ ᠁E-3C9B909CDF32

**BUSINESS PROMISSORY NOTE AND SECURITY AGREEMENT**

**BORROWER: JEM Contracting Co LLC**

**PRINCIPAL (including processing fees): $20,000.00**

**DATE: 4/26/2016**

**1. PROMISE TO PAY: JEM Contracting Co LLC** ("Borrower"), with its principal place of business located at 151 Talman Street N, Norwich, Connecticut, 06360, does hereby promise to pay to the order of **BANK OF LAKE MILLS**, its successors and/or assigns ("Lender") at its offices located at 136 E. Madison St., Lake Mills, WI 53551, or at such other location or in such other manner as designated by Lender, the sum of **TWENTY THOUSAND DOLLARS AND ZERO CENTS ($20,000.00)** plus interest at the daily interest rate set forth below in Section 2 in accordance with the payment schedule set forth below in Section 3. This Business Promissory Note and Security Agreement ("Loan Agreement") is accepted by Lender in Wisconsin.

**2. INTEREST RATE:** The unpaid Principal shall bear interest at the rate of **0.332630136986%** per day until paid in full.

**3. PAYMENT SCHEDULE/APPLICATION OF PAYMENTS:** Borrower shall repay the Principal and interest commencing on **4/28/2016** and on each Business Day thereafter until **4/27/2017** with each daily payment equaling **$137.31**, followed by a final payment of **$136.05 on 4/28/2017**, when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full. "Business Day" means any Monday through Friday, except Federal Reserve holidays. The period commencing on 4/28/2016 and ending on 4/28/2017 is referred to as the "Repayment Period."

All payments shall be made by automatic ACH debit from the "Designated Checking Account" set forth in the Business Loan Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) given by Borrower to Lender or pursuant to an alternative payment method prescribed by Lender, and Borrower shall maintain balances in the Designated Checking Account sufficient to make each daily payment due under this Loan Agreement.

Payments shall be applied on the date received first to late charges and other charges due under this Loan Agreement, then to unpaid accrued interest, and then to Principal.

**4. VOLUNTARY PREPAYMENT AND PREPAYMENT PREMIUM:** Borrower has the right to prepay the unpaid Principal in full at any time, but may not make partial prepayments (except as permitted by applicable law). Any such prepayment of the unpaid Principal shall be accompanied by a prepayment premium equal to the greater of (a) fifteen percent (15%) of the amount of the unpaid Principal as of the date of such prepayment or (b) the aggregate amount required to be repaid by Borrower to Lender during the Repayment Period reduced by the sum of (i) the aggregate amount of any payments made by Borrower to Lender pursuant to Section 3 above prior to the date of such prepayment and (ii) the amount of the unpaid Principal as of the date of such prepayment. This prepayment premium is in addition to any and all interest calculated and accrued on the unpaid Principal as of the date of such prepayment in accordance with Section 2 above together with all other amounts then due and payable under this Loan Agreement. No prepayment is permitted unless all outstanding charges are paid in full as of the date of prepayment. If Borrower desires to prepay, Borrower shall forward a written request to WBLPayoff@wbl.com. In addition, Borrower may contact Lender s Servicing Agent at 120 W. 45th St. 29th Floor, New York, NY 10036 or at 212-293-8200 and Lender s Servicing Agent shall provide Borrower with the amount of the unpaid Principal, prepayment premium, and any other amounts due under the terms of the Loan Agreement as of a date designated by Borrower. For the avoidance of doubt, as permitted under applicable law, if the Obligations (as defined below) have been accelerated on the happening of an Event of Default (as defined below), payment of Principal and interest shall be deemed a prepayment for purposes of this Section 4 and shall be accompanied by a prepayment premium.

**5. RETURNED PAYMENT CHARGE:** Borrower will pay a charge of **thirty-five dollars ($35.00)** ("NSF Charge") in connection with any payment by check or electronic transfer that is returned unpaid because of an insufficient balance in the Designated Checking Account or otherwise.

**6. SECURITY INTEREST:** Borrower grants to Lender a security interest in and to any and all property as described below in this Section 6 to secure payment of all debts, obligations and liabilities of Borrower to Lender evidenced by this Loan Agreement or any other loan agreement with Lender ("Obligations"). This is a continuing security interest and will continue in effect even though all or any part of the Obligations is paid in full and even though for a period of time Borrower may not be indebted to Lender. The collateral includes the property purchased with the proceeds of this Loan Agreement described on Schedule A attached to and made a part of this Loan Agreement ("Purchase Money Collateral"), the vehicles and other personal property described on Schedule B attached to and made a part of this Loan Agreement ("Specific Collateral") and all other

*Rev. Sep 2014*                                                                                   P a g e  |5

DocuSign Envelope ID: 1742A228-240D-499D-L__E-3C9B909CDF32

BLM bank of lake mills

personal property now owned or hereafter acquired by Borrower (which, along with Purchase Money Collateral and Specific Collateral, is collectively referred to as "Collateral"), including, but not limited to, all goods (except consumer goods), farm products, inventory, equipment, furniture, money, instruments, accounts, accounts receivable, contract rights, documents, chattel paper, general intangibles, including, but not limited to, all products and proceeds of Collateral and all additions and accessions to, replacements of, insurance proceeds of, and documents covering Collateral, all property received wholly or partly in trade or exchange for Collateral, all leases of Collateral and all rents, revenues, issues, profits and proceeds arising from the sale, lease encumbrance, collection, or any other temporary or permanent disposition, of the Collateral or any interest therein. Borrower agrees that Lender may file any financing statement, lien entry form or other document Lender requires in order to perfect, amend or continue Lender's security interest in the Collateral and Borrower agrees to cooperate with Lender as may be necessary to accomplish said filing and to do whatever Lender deems necessary to protect Lender's security interest in the Collateral. Borrower shall ensure that Lender is named as the only lien holder on the titles to the motor vehicles listed on Schedule B to this Loan Agreement as of the date of this Loan Agreement (or the nearest subsequent date as permitted under applicable law).

Borrower shall maintain the Collateral in good condition and repair and not permit its value to be impaired; keep the Collateral free from all liens, encumbrances and security interests (other than those created or expressly permitted by this Loan Agreement); defend the Collateral against all claims and legal proceedings by persons other than Lender; pay and discharge when due all taxes, license fees, levies and other charges upon the Collateral; not sell, lease or otherwise dispose of the Collateral or permit it to become a fixture or an accession to other goods, except as specifically authorized by Lender in writing; and not permit the Collateral to be used in violation of any applicable law, regulation or policy of insurance.

Borrower shall pay all expenses and, upon request, take any action reasonably deemed advisable by Lender to preserve the Collateral or to establish, determine priority of, perfect, continue perfected, terminate and/or enforce Lender's interest in the Collateral or rights under this Loan Agreement and, further, Borrower authorizes Lender, with full power of substitution, to execute in Borrower's name any documents necessary to perfect, amend or to continue Lender's interest in the Collateral or rights under this Loan Agreement or to demand termination of filings of other secured parties. Lender has no duty to protect, insure or realize upon the Collateral. Loss of or damage to the Collateral shall not release Borrower from any of the Obligations.

## 7. FOR BORROWERS OR COLLATERAL IN LOUISIANA ONLY:

(a)  Foreclosure. In the event that Borrower is domiciled in, or Collateral is located in, Louisiana, on the happening of an Event of Default, Lender shall have the right to commence appropriate foreclosure proceedings against the Collateral and against Borrower.

(b)  Seizure and Sale of Collateral. In the event that Lender elects to commence appropriate Louisiana foreclosure proceedings under the Loan Agreement, Lender may cause the Collateral, or any part or parts thereof, to be immediately seized and sold, whether in term of court or in vacation, under ordinary or executory process, in accordance with applicable Louisiana law, to the highest bidder for cash, with or without appraisement, and without the necessity of making additional demand upon or notifying Borrower or placing Borrower in default, all of which are expressly waived.

(c)  Executory Process. For purposes of foreclosure under Louisiana executory process procedures, Borrower confesses judgment and acknowledges to be indebted to Lender, up to the full amount of the Obligations, in Principal, interest, prepayment charges, NSF Charges, and any other unpaid costs and charges authorized by the Loan Agreement, reasonable attorneys' fees and all costs of collection. Borrower further confesses judgment and acknowledges to be indebted unto and in favor of Lender in the amount of any additional advances that Lender may make on Borrower's behalf pursuant to the Loan Agreement, together with interest thereon. To the extent permitted under applicable Louisiana law, Borrower additionally waives the following: (1) the benefit of appraisal as provided in Articles 2332, 2336, 2723, and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale; (2) the demand and three (3) days' delay as provided under Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; (3) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (4) the three (3) days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (5) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above.

(d)  Keeper. Should any or all of the Collateral be seized as an incident to an action for the recognition or enforcement of this Loan Agreement, by executory process, sequestration, attachment, writ of *fieri facias* or otherwise, Borrower hereby agrees that the court issuing any such order shall, if requested by Lender, appoint Lender, or any agent designated by Lender or any person or entity named by Lender at the time such seizure is requested, or any time thereafter, as "Keeper" of the Collateral as provided under La. R.S. 9:5136, *et seq*. Such a Keeper shall be entitled to reasonable

DocuSign Envelope ID: 1742A228-240D-499D-ᴸⱼᴶᴇ-3C9B909CDF32

**BLM** bank of lake mills

compensation. Borrower agrees to pay the reasonable fees of such Keeper, which compensation to the Keeper shall also be secured by this Loan Agreement.

**8. REPRESENTATIONS, WARRANTIES, AND COVENANTS:** Borrower makes the following representations, warranties and covenants:

(a)  Borrower is the owner of or is acquiring the Purchase Money Collateral free of all liens, encumbrances and security interests (except Lender's security interest), and is the owner of all other Collateral free of all liens, encumbrances and security interests, except Lender's security interest and any security interests listed on Schedule C attached and made a part of this Loan Agreement;

(b)  **the proceeds of this Loan Agreement will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods. Borrower understands Lender is relying on the accuracy of this representation in disbursing the loan proceeds and that Borrower's agreement not to use the proceeds of this Loan Agreement for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods means that certain important duties imposed upon entities making loans for consumer/personal purposes, and certain important rights conferred upon consumers, pursuant to federal or state law will not apply to this Loan Agreement, or any other document or instrument given to Lender in connection with or related to this Loan Agreement. Borrower also understands that Lender will be unable to confirm whether the proceeds of this Loan Agreement will be used for business purposes only. Borrower acknowledges and agrees that a breach by Borrower of the provisions of this subsection 8(b) will not affect Lender's right to (I) enforce Borrower's promise to pay for all amounts owed under this Loan Agreement, regardless of the purpose for which the proceeds of this Loan Agreement are in fact obtained or (II) use any remedy legally available to Lender, even if that remedy would not have been available had the proceeds of this Loan Agreement been used for consumer purposes;**

(c)  the Collateral will be kept at Borrower's address set forth above in Section 1, on Schedule D attached to and made a part of this Loan Agreement;

(d)  Borrower's name in Section 1 above is its exact name on its organizing and/or registered documents, if any, and is Borrower's principal place of business. Borrower shall immediately advise Lender of any change in Borrower's name or address as set forth above in Section 1;

(e)  Borrower is duly organized, validly existing and in good standing under the law of the jurisdiction in which it is organized, and has all licenses and authorizations necessary to carry on its business as now being conducted;

(f)  Borrower has the full power and authority to execute, deliver and perform all transactions contemplated by this Loan Agreement and the performance of and compliance with the terms of this Loan Agreement will not violate the Borrower's organizational documents or constitute a default of any contract, agreement or other instrument to which Borrower is a party;

(g)  Borrower has duly authorized the execution, delivery and performance of this Loan Agreement and has duly executed and delivered this Loan Agreement, and this Loan Agreement constitutes a legal, valid and binding obligation of the Borrower, enforceable against it in accordance with its terms;

(h)  there is no action, suit, proceeding or investigation pending or, to Borrower's knowledge, threatened against or affecting it or any of its assets before or by any court or other governmental authority which, if determined adversely to it, would have a material adverse effect on its financial condition, business or prospects, or the value of the Collateral; and

(i)  Borrower will provide any financial information on request or permit an examination of its books and records to permit Lender to confirm Borrower's ability to pay its Obligations and all other financial obligations.

(j)  Borrower has not been notified by any of its lenders that it is in default under the terms of any of its credit agreements, nor has Borrower done, caused to be done, or failed to do any act or omission that would result in a default under any credit agreement.

DocuSign Envelope ID: 1742A228-240D-499D-...  ...E-3C9B909CDF32
bank of lake mills

(k) No third party source of financing for Borrower's customers has discontinued, or threatened to discontinue providing financing to Borrower's customers.

9. **DEFAULT:** On the happening of any of the following events (each an "Event of Default"):

(a) failure by Borrower to pay any daily or other payment required by this Loan Agreement when due;

(b) failure by Borrower to observe, perform, keep or abide by any term, covenant or condition contained in this Loan Agreement or any other document or instrument given to Lender in connection with or related to this Loan Agreement, including any real estate mortgage, security agreement or other agreement or document now or hereafter evidencing or creating any security for the payment of this Loan Agreement;

(c) the filing of a bankruptcy proceeding, assignment for the benefit of creditors, issuance of a judgment execution, garnishment or levy against, or the appointment of a representative of any kind for the commencement of any proceeding for relief from indebtedness by or against Borrower;

(d) the happening of any event, which, in the reasonable judgment of Lender, adversely affects Borrower's ability or the ability of any guarantor of Borrower's Obligations under this Loan Agreement ("Guarantor") to repay Borrower's Obligations, or materially affects the value of the Collateral;

(e) any written representation, statement or warranty made to Lender by Borrower or any Guarantor is untrue or is breached;

(f) the occurrence of (I) a default under any guaranty of Borrower's Obligations ("Guaranty"), or any other document or instrument given to Lender in connection with or related to this Loan Agreement, or (II) an event of default under any other loan agreement that Borrower may have with any other lender;

(g) any Guaranty is revoked or becomes unenforceable for any reason;

(h) Lender, upon examination of Borrower's financial information during the term of this Loan Agreement, becomes insecure in Borrower's ability to pay the Obligations,

Lender, at its option, without notice or demand (except as required by applicable law), may (A) declare the entire unpaid balance of all Obligations under this Loan Agreement or other agreements immediately due and payable, and shall have the right to proceed to collect such Obligations under applicable law and enforce its rights under any Guaranty; and (B) proceed against the Collateral and any other collateral securing any obligation to Lender as if said collateral secured the Obligations, as permitted under the applicable Uniform Commercial Code or any other applicable law. As permitted under the Uniform Commercial Code, Lender may take possession of Collateral without notice or hearing, which Borrower waives, and upon demand, Borrower shall assemble the Collateral and make it available to Lender at any convenient place designated by Lender. Lender's receipt of any payment after the occurrence of an Event of Default, whether or not the Obligations have been accelerated, shall not constitute a waiver of the default or of Lender's rights or remedies upon such default, including Lender's right to accelerate the unpaid balance of the Obligations and pursue collection thereof. Election by Lender to pursue or waive any remedy shall not exclude pursuit of any other remedy.

10. **INSPECTION OF COLLATERAL AND PLACE OF BUSINESS:** Lender and Lender's representatives and agents shall have the right at any reasonable time or times to inspect the Collateral wherever located and the interior and exterior of any Borrower place of business, and Borrower shall assist Lender and its representatives and agents in making any such inspection. During an inspection of any Borrower place of business, Lender or Lender's representatives and agents may examine, among other things, whether Borrower (i) has a place of business that is separate from any personal residence, (ii) is open for business, (iii) has sufficient inventory and/or staff to conduct Borrower's business and (iv) has one or more credit card terminals or point of sale systems if Borrower processes credit card transactions. When performing an inspection, Lender or Lender's representatives and agents may photograph the interior and exterior of any Borrower place of business, including any signage. Any photograph will become and remain the sole property of Lender and will be shared with Lender's employees, representatives and agents. Borrower grants Lender the irrevocable and permanent right to display and share any photograph in all forms, including composite and modified representations, for all purposes, with Lender's employees, representatives and agents. Borrower agrees to reimburse Lender for the cost of the inspections described in this Section 10.

DocuSign Envelope ID: 1742A228-240D-499D-_.JOE-3C9B909CDF32

BLM  bank of lake mills

**11. EVALUATION OF CREDIT**: Borrower authorizes Lender to obtain business and personal credit bureau reports in Borrower's name, at any time and from time to time for purposes of deciding whether to approve the requested business loan or for any update, renewal, extension of credit or other lawful purpose.  Upon Borrower's request, Lender will advise Borrower if Lender obtained a credit report and Lender will give Borrower the credit bureau's name and address.  Borrower agrees to submit current financial information, a new credit application, or both, in Borrower's name at any time promptly upon Lender's request.

**12. ATTORNEYS' FEES, COLLECTION COSTS AND POST-JUDGMENT RATE OF INTEREST**: In the event Lender retains counsel with respect to enforcement of its rights under this Loan Agreement or any other document or instrument given to Lender, Borrower agrees to pay all expenses of Lender in enforcing its rights to collect the Obligations or in taking possession, holding, preparing for disposition, and disposing of the Collateral, including Lender's reasonable attorneys' fees (whether or not an action is commenced and whether or not in the court of original jurisdiction, appellate court, bankruptcy court or otherwise) and all costs of collection of any judgment and any costs of appeal. In the event this Loan Agreement is brought to a judgment, interest shall accrue at the interest rate set forth in Section 2 above until the judgment is satisfied, except as prohibited by applicable law.

**13. SALE OF LOAN AGREEMENT**: This Loan Agreement, or an interest in this Loan Agreement, together with the rights to the Collateral, may be sold, assigned, transferred or conveyed by Lender one or more times.

**14. INDEMNIFICATION**: Except for Lender's willful misconduct, Borrower will indemnify and save Lender harmless from all loss, costs, damage, liability or expenses (including, without limitation, court costs and reasonable attorneys' fees) that Lender may sustain or incur by reason of defending or protecting Lender's security interest or the priority thereof or enforcing its rights to collect the Obligations, or in the prosecution or defense of any action or proceeding concerning any matter growing out of or in connection with this Loan Agreement and/or any other documents or instruments now or hereafter executed in connection with this Loan Agreement and/or the Obligations and/or the Collateral.  This indemnity shall survive the repayment of the Obligations and the termination of this Loan Agreement.

**15. MISCELLANEOUS:**

(a) Delay or failure of Lender to exercise any of its rights under this Loan Agreement shall not be deemed a waiver thereof.  No waiver of any condition or requirement shall operate as a waiver of any other or subsequent condition or requirement.

(b) This Loan Agreement may not be modified orally, and may be modified only upon written agreement signed by Lender.

(c) Lender is an FDIC insured, Wisconsin state chartered bank and this Loan Agreement is accepted by Lender in Wisconsin. CONSEQUENTLY, THIS AGREEMENT WILL BE GOVERNED BY FEDERAL LAW APPLICABLE TO AN FDIC INSURED INSTITUTION AND TO THE EXTENT NOT PREEMPTED BY FEDERAL LAW, THE LAWS OF THE STATE OF WISCONSIN WITHOUT REGARD TO CONFLICT OF LAW RULES. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Loan Agreement will be governed by such laws.

(d) Borrower and Lender agree that any action or proceeding to enforce any rights or obligations arising out of this Loan Agreement shall be commenced either in Wisconsin, New York or the state (or commonwealth, as the case may be) of Borrower's address set forth in Section 1 above ("Borrower's State") and Borrower waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Borrower at the address specified by Borrower above in Section 1, or as otherwise provided by the laws of the State of Wisconsin, the State of New York, the Borrower's State, or the United States of America. Borrower and Lender agree that venue is proper in such courts.

(e) Without affecting the liability of Borrower or any Guarantor, Lender may accept partial payments marked "in full" or otherwise, release or impair any Collateral or agree not to sue any party liable on this Loan Agreement without waiving any of its rights hereunder.

(f) Presentment, protest, demand and notice of dishonor are waived.

DocuSign Envelope ID: 1742A228-240D-499D-L ..JE-3C9B909CDF32
BLM bank of lake mills

(g) Without affecting the liability of any Guarantor, Lender may from time to time, without notice, renew or extend the time for payment.

(h) Borrower expressly agrees that the interest rate set forth above in Section 2 is appropriate under the circumstances and shall be the applicable rate at which unpaid Principal (and Costs, as defined below) shall bear interest under this Loan Agreement, notwithstanding any rate of interest prescribed by statute from time to time; provided, however, if fulfillment of any provisions of this Loan Agreement or any other instrument securing the Obligations is subject to a law that sets maximum interest rates or other charges, and that law is finally interpreted so that the interest or other fees collected or to be collected in connection with this Loan Agreement exceed the permitted limits, then (I) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit and (II) any sums already collected from Borrower that exceed the permitted limits will be refunded or credited to Borrower and the obligations created by this Loan Agreement shall be fulfilled to the limit of such validity as is permitted by law.

(i) Borrower shall keep the Collateral and Lender's interest in it insured under policies with such provisions, for such amounts and by such insurers as shall be satisfactory to Lender from time to time, and shall furnish evidence of such insurance satisfactory to Lender upon request.  Borrower assigns (and directs any insurer to pay) to Lender the proceeds of all such insurance and any premium refund and authorizes Lender to endorse in the name of Borrower any instrument for such proceeds or refunds and, at the option of Lender, to apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to restoration of the Collateral, returning any excess to Borrower.  Lender is authorized, in the name of Borrower or otherwise, to make, adjust and/or settle claims under any insurance on the Collateral, or cancel the same after the occurrence of an Event of Default.

(j) If Borrower fails to perform any of Borrower's duties set forth in this Loan Agreement or in any evidence of or document relating to the Obligations, Lender is authorized, in Borrower's name or otherwise, to take any such action, including, without limitation, signing Borrower's name or paying any amount so required, and the cost ("Cost") shall be one of the Obligations secured by this Loan Agreement and shall be payable by Borrower upon Lender's demand with interest at the interest rate set forth above in Section 2 from the date of payment by Lender.

(k) Borrower releases Lender from any liability for any act or omission relating to the Obligations, the Collateral or this Loan Agreement, except Lender's willful misconduct.

(l) Invalidity or unenforceability of any provision of this Loan Agreement shall not affect the validity or enforceability of any other provision.

(m) The terms of this Loan Agreement shall be binding upon Borrower and its permitted successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

(n) Borrower acknowledges that a broker may have received compensation in connection with this Loan Agreement.

(o) Any of the Borrower, Lender or a Guarantor may choose to arbitrate any or all disputes and claims arising out of or relating to this Loan Agreement, the Guaranty or any other related document.  A claim includes matters arising as an initial claim, counter-claim, cross-claim, third-party claim, or otherwise.  If the Borrower, Lender or a Guarantor chooses to litigate any dispute or claim arising out of or relating to this Loan Agreement, the Guaranty or any related document through a judicial action, the decision to litigate shall not be deemed a waiver of arbitration, and if such judicial action is contested, any party may thereafter invoke its arbitration rights at any time before any discovery is taken in the judicial action. If the Borrower, Lender or a Guarantor seeks to have a dispute resolved by arbitration, that party must first send to the other party(ies) by certified mail, a written Notice of Intent to Arbitrate.  If Borrower, Lender or a Guarantor do not reach an agreement to resolve the claim within 10 days after the Notice is received, any party may commence an arbitration proceeding with the American Arbitration Association ("AAA").  Lender will promptly reimburse Borrower or the Guarantor any arbitration filing fee, however, in the event that both the Borrower and the Guarantor must pay arbitration filing fees, Lender will only reimburse the Borrower's arbitration filing fee and, except as provided in the next sentence, the Lender will pay all arbitration administration and arbitrator fees.  If the arbitrator finds that either the substance of any claim raised by Borrower or a Guarantor or the relief sought by Borrower or a Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Procedure 11(b), then Lender will pay the administration or arbitrator fees only if required by the AAA Rules.  If the arbitrator grants relief to the Borrower or a Guarantor that is equal to or greater than the value of the relief requested by the Borrower or a Guarantor in the arbitration, Lender shall reimburse Borrower or the Guarantor, as applicable, for

DocuSign Envelope ID: 1742A228-240D-499D-....DE-3C9B909CDF32

bank of lake mills

that party's reasonable attorneys' fees and expenses incurred for the arbitration.  BORROWER AND LENDER AGREE THAT BY ENTERING INTO THIS LOAN AGREEMENT, EACH IS WAIVING THE RIGHT TO TRIAL BY JURY.  BORROWER AND LENDER MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF REPRESENTATIVE OR CLASS MEMBER IN ANY PURPORTED REPRESENTATIVE OR CLASS PROCEEDING.  Further, Borrower and Lender agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void.  Any award by the individual arbitrator shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered and enforceable as a judgment in any court of competent jurisdiction, including as a judgment that permits Lender to initiate or complete the exercise of its remedies against, or its realization or foreclosure upon, any collateral or security provided for the benefit of Lender.  This arbitration provision is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1.

(p)  In order to ensure a high quality of service for Lender's customers, Lender may monitor and/or record telephone calls between Borrower and Lender's employees. Borrower acknowledges that Lender may do so and agrees in advance to any such monitoring or recording of telephone calls.

(q)  Borrower authorizes Lender and Lender's affiliates, agents and independent contractors to contact Borrower at any telephone number Borrower provides to Lender or from which Borrower places a call to Lender, or any telephone number where Lender believes it may reach Borrower, using any means of communication, including, but not limited to, calls or text messages to mobile, cellular, wireless or similar devices or calls or text messages using an automated telephone dialing system and/or artificial voices or prerecorded messages, even if Borrower incurs charges for receiving such communications. Lender and Lender's affiliates, agents and independent contractors, may use any other medium not prohibited by law, including, but not limited to, mail, e-mail and facsimile, to contact Borrower. Borrower expressly consents to conduct business by electronic means.

(r)  TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW, BORROWER AND LENDER WAIVE THEIR RIGHT TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON, ARISING OUT OF OR RELATED TO THIS LOAN AGREEMENT AND ALL OTHER DOCUMENTATION EVIDENCING THE OBLIGATIONS, IN ANY LEGAL ACTION OR PROCEEDING.

(s)  This Loan Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. For purposes of the execution of this Loan Agreement, electronic or fax signatures shall be treated in all respects as original signatures.

**PRIOR TO SIGNING THIS LOAN AGREEMENT, BORROWER READ AND UNDERSTOOD ALL OF THE PROVISIONS OF THIS LOAN AGREEMENT. AFTER DUE CONSIDERATION, AND THE OPPORTUNITY TO CONSULT WITH OTHER LENDERS AND AN ATTORNEY, ACCOUNTANT OR OTHER COMPETENT PROFESSIONAL OF ITS CHOICE, BORROWER KNOWINGLY, WILLFULLY AND VOLUNTARILY AGREES TO THE TERMS OF THIS LOAN AGREEMENT.**

**BORROWER ACKNOWLEDGES RECEIPT OF A FULLY COMPLETED AND EXECUTED VERSION OF THIS LOAN AGREEMENT.**

BORROWER: JEM Contracting Co LLC

By:  *Elissa E Speer*
— DocuSigned by:
— 7A90451778B447F...

Printed Name:  Elissa E Speer

Title:  member

DocuSign Envelope ID: 1742A228-240D-499D-_DE-3C9B909CDF32
ᴮᴸᴹ 🏦 bank of lake mills

## ACKNOWLEDGMENT

STATE/COMMONWEALTH OF _____ )

                                                        )        ss.:

COUNTY OF _____                           )

On the_____ day of _____, in the year ____ before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared <u>Elissa E Speer</u>, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Business Promissory Note and Security Agreement and acknowledged to me that she/he executed the same in her/his capacity as _____ of_____, and that by her/his signature on the Business Promissory Note and Security Agreement, the individual, or the person upon behalf of which the individual acted, executed the Business Promissory Note and Security Agreement.



_____
Notary Public
My Commission expires:

DocuSign Envelope ID: 1742A228-240D-499D-d3DE-3C9B909CDF32

BLM bank of lake mills

# SCHEDULE A - PURCHASE MONEY COLLATERAL

NONE