**ELISSA SPEER**

JAN 25 2021 PM 1:34
FILED-USDC-CT-HARTFORD

**3:19-cv-01778-AWT**

**VS**

**DANJON CAPITAL, INC**
**TINA HAMPTON**
**HOGAN HULET PLLC**
**WORLD BUSINESS LENDERS, LLC**
**WBL SPE II LLC**

### RICO CASE STATEMENT

The Plaintiff, Elissa Speer, submits the following RICO case statement per the Court's order, to the best of her knowledge and belief:

**1. The alleged unlawful conduct that is claimed to be in violation of 18 U.S.C. §§ 1962(a), (b), (c) and/or (d).**

All the Defendants derived income from the illegal loans originated as complained of in the Complaint – the corporate parties through origination and servicing, and the indivdidual defendants through attempts at collection, and Defendant Hampton as an employee of corporate Defendant Danjon.

They invested the proceeds, it appears, for the purpose of inflating their balance sheets and attracting additional investors in the illegal enterprise. World Business Lenders also appears to have pledged, sold, transferred or hypothecated the illegal note and mortgage on 526-528 Main Street to WBL SPE II, LLC.

All the Defendants conducted these transactions interstate, between New

Jersey, Connecticut and Nevada, to the extent presently known.

Defendant Hogan Hulet PLLC collected on the unlawful debts by using the Nevada state court system, and did so purposefully to evade usury laws in both Connecticut (the Plaintiff's home state and domicile of the property effected by the Danjon Loan), and California (where the real Note and contract at issue claimed to be enforceable, and the forum of choice in said contract offered by Defendants Danjon, and Hampton on its behalf.

They operated in the same network of people classified as "associates", "funders" and "brokers", and that relationship is described best at http://leasingnews.org/PDF/naelb_attendee2016.pdf, to the extent it was during that year. Danjon Capitol and World Business Lenders were brokers.

**2.  The identity of each defendant and the alleged misconduct and basis of liability of each defendant.**

Defendant Danjon Capital, Inc. is a Nevada corporation also registered to do business in the State of California. It operated as one of the illegal lenders the Plaintiff was referred to after paying exhorbitant finder's fees, and brokered a loan knowing the same to usurious in nature (as the forum of choice was California by its terms, and it encumbered real property in Connecticut). It then, using this illegal loan as the basis, defrauded the Plaintiff into executing a fake restaurant equipment lease in order to obtain the funds it had already agreed to disburse under the mortgage. It participates in the rent-a-bank scheme complained of in the Complaint wherein the participants, predatory lenders, partnered with banks to evade state interest rate caps, usury laws

and other regulatory requirements for loans and servicing of loans secured by real property, in addition to other laws that govern investments and financial activities that are as of yet to be revealed through discovery. Danjon was not the true lender, and obtained the funds tendered to the Plaintiff at exhorbitant rates from either investors it had defrauded and/or a bank that served a role to that of Bank of Lake Mills, whose identity it had concealed from the Plaintiff and others, including state and federal regulators, see *infra*. It then sold, transfered and/or borrowed against the Note, which was created as a consequence of fraud on the inducement, and said fraud was conducted using mail and wire. The restaurant equipment agreement was also a fraud on the inducement, and it was used to obtain a fraudulent state court judgement, which is believed to be listed as an asset on Danjon's books so as to encourage further investors into its illegal scheme or for future sale or hypothecation to a third party or third party debt collector.

Defendant Tina Hampton is an employee of Danjon Capital. She facilitated the illegal mortgage complained of, and then executed the bait and switch to get the Plaintiff to execute the false restaurant equipment lease agreement, which was an artifice used to obtain an illegal judgment. She, on its behalf, made use of the mails and wires over state lines to complete the transactions at issue in the complaint.

Defendant Hogan Hulet PLLC is a law firm licensed to practice in Nevada, and a partnership domiciled in Nevada. It sought to enforce the fraud that was the restaurant lease equipment agreement, and to take other steps to collect on the

unlawful debt created by Danjon as a consequence of fraudulent inducement.

Defendant World Business Lenders, LLC is a New Jersey Corporation. It is in the same network of brokers, investors and lenders as Danjon, and part of the rent-a-bank scheme. It utilized Bank of Lake Mills to originate the 526-528 North Main Street mortgage, and that bank was in fact the true lender. World Business Lenders further sought and obtained a judgment interest exceeding 121% and obtained the property under false pretenses. It also used, in interstate commerce, the mail and wires to originate, service and collect on the unlawful debt.

Defendant WBE SPE II, LLC is a corporation owned by World Business Lenders, LLC, and believed to be an alter ego of the same, with no true independent existence of its own, and whose identity only serves the purpose of the racketeering scheme at issue in the complaint.

**3. The identity of the alleged wrongdoers, other than the defendants listed in response to paragraph 2, and the alleged misconduct of each wrongdoer.**

The attendees listed at http://leasingnews.org/PDF/naelb_attendee2016.pdf are believed to be and/or have been in the rent-a-bank network scheme as of 2016, and it is believed World Business Lenders and WBL SPE II, LLC had subsequently entered the network, as did Hogan Hulet PLLC either as a hub for illegal debt collection or as a spoke of Danjon Capital, Inc as the latter's exclusive enforcement arm.

Bank of Lake Mills, NA, a Wisconsin institution, is the true lender on the 256-258 North Main Street loan, which it allowed World Business Lenders, LLC to utilize as

a means of escaping both Connecticut and Wisconsin banking and usury laws.

Stephanie Nicksie, esq., had been given instructions by Danjon Capital to bring an action to enforce it in Connecticut, in Danbury Superior Court, knowing that the Plaintiff lived in New London County.

**4.  The identity of the alleged victims and the manner in which each victim was allegedly injured.**

The Plaintiff is the victim named in the Amended Complaint. She was injured as a consequence of fraud. Her credit was damaged. Her property was encumbered and title to it slandered. She was the subject of unlawful debt collection and unlawful debt collection actions.

**5.  A description of the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim, which shall include the following information:**
**a.  The alleged predicate acts and the specific statutes which were allegedly violated;**
**b.  The dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;**
**c.  If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made shall be identified;**
**d.  Whether there has been a criminal conviction for violation of the predicate acts;**
**e.  Whether civil litigation has resulted in a judgment in regard to the predicate acts;**
**f.   The manner in which the predicate acts form a "pattern of racketeering activity";  and**
**g.  Whether the alleged predicate acts relate to each other as part of a common plan, and if so, a detailed description of the common plan.**

The Plaintiff began using an entity that called itself Corporate Funding Network (found online, but is now defunct) in order to obtain a $30,000 loan to be secured by real property in Connecticut known as 187 Talman Street, 97 Summit Street and 110 McKinnley Street in Norwich, Connecticut. She paid a finder's fee of $2,500 to Corporate Capital Network, on of about March 2015, to start the process; $2,516.99 to an entity called "Business Funding Network" on or about February of 2016; and then to Danjon Capital itself in the amount of $2,500 on or about March of 2016 (the front for the "Network" and its functional "Hub"), in order to be connected to Danjon Capital, Inc. Defendant Tina Hampton made the first contact with the Plaintiff on or about March of 2016, and processed paperwork to qualify her for a loan, which was granted in the form of the McKinnley Street mortgage, and which the Plaintiff was induced on that representation to execute a note in favor of Danjon on or about May 18, 2016, which she did. Hampton then, on May 19, 2016, represented to the Plaintiff that the funds could not be released unless she executed a lease agreement for restaurant equipment, and she was told to create a list of equipment that included ladders, scaffolding and a leaf blower for incorporation into said agreement, and that agreement was executed. The Plaintiff was further charged $1,150 in document fees, and the conditions required for approval, in addition to having paid the finder's fees, were: "Copy of all Signatures' driver's license (legible)", "Documentation acceptable to Lessor", "Direct Deposit Required for Monthly Payment", "Standard DANJON fees",

"Current Secretary of State Document", "Provide insurance within 30 days of lease execution", "All Title cost to be paid by Lessee", "$900 Documentation fee due prior to commencement", "Lien all three properties", "owned by BWM, LLC in Norwich, CT", "UCC Filing on all equipment used for contracting purposes" and "3 Months Bank Statements" – and said requirements were reduced to writing on May 19, 2016 by Defendant Tina Hampton. Hampton also offered, for the restaurant equipment that Danjon never owned or never had any right, title or interest to or in, a purchase option of said equipment to the Plaintiff for the sum of one dollar on the same date. The breakdown of all fees, costs, and funding given by Defendant Hampton on May 19, 2016 was as follows:

"Lease Amount $30,000.00
Attorney Fees for Title Premium and Recording - $ 1,527.00
Title Search and Foreclosure Reports - $ 1,261.00
Documentation Fee DANJON Capital, Inc. - $ 450.00
First & Last Payment (Plus Taxes) - $ 2,287.90
Total Funding to JEM Contracting, Co., LLC $24,474.10"

The Plaintiff was unable to obtain the entire amount of funds she attempted to qualify for all funds she sought as of May 18, 2016, Defendant Hampton, at the behest of Danjon, referred the Plaintiff to another finder, to which the Plaintiff paid $2,500 on or about May 2016, and that resulted in World Business Lenders, LLC being identified as a bank who could lend additional funds. World Business Lenders used Bank of Lake Mills, NA to obtain the funds, and disguised from the Plaintiff the fact that Bank of Lake Mills, NA was in fact the true lender. World Business Lenders, LLC borrowed the

funds from Bank of Lake Mills, NA, but structured the transaction in such a way that it's exhorbitant rate resulting in 121% interest and prepayment penalties prevailed, which it filed a foreclosure action to collect on October 19, 2016, and that action was assigned docket number KNL-CV16-6028224-S and resulted in a judgment of strict foreclosure. World Business Lenders, LLC, in order to disguise its role in the scheme and hypothecate the judgment, the property obtained and the Note, assigned these to WBE SPE II, LLC, its alter ego. In order to further conceal the scheme to hypothecate these assets and conceal their whereabouts, WBE SPE II, LLC then conveyed the property to S&G Home Development, LLC, another New Jersey Corporation whose address is the same as WBE SPE II, LLC and World Business Lenders, LLC, on or about April of 2020.

On default of the Danjon loan, which has an exhorbitant rate of interest, Danjon instructed Hogan Hulet PLLC to bring suit on the restaurant lease equipment agreement, and they obtained a judgment in Clark County District Court, in Nevada, on February 22, 2017. Danjon also instructed its attorney, Stephanie Nicksie, to see registration of that judgment in Connecticut as a foriegn judgment on July 19, 2019, and it was assigned docket number DBD-CV19-4021959-S, and the Plaintiff incorporates all documents and pleadings on file there by reference, and said action was withdrawn after the Plaintiff moved to dismiss it.

The common scheme runs afoul of 18 USC §1964(c) as a consequence of wire fraud (18 USC §1343) and Money Laundering (18 USC §1956). The operation of the

network in which all the Defendants operate involves referals that begin with exhorbitant finder's fees, which any prospective borrower would become qualified for funds in the event that paid them. This constitutes a ring of referal among the "funders" such as Bank of Lake Mills, the "brokers" (such as Danjon Capital, Inc and World Business Lenders, LLC and its controlled entities) and its "associates" who collect the debt and execute the contracts (such as Tina Hampton and Hogan Hulet PLLC) operating and which is defined as "Racketeering Activity" pursuant to 18 USC §1961).

It is believed that the Network relies on its Hub as a front to conceal the relationships among its various spokes and subordinate hubs. For illustrative example, the Network first passed the Plaintiff to Danjon Capital, whose associates Defendants Hampton and Hogan Hulet acted to implement and then collect upon the unlawful debt. Prior to attempts at collection, the Network then passed the Plaintiff to World Business Lenders, LLC, who obtained funds from Bank of Lake Mills, NA, of course after a generous finder's fee was paid in order to prequalify the Plaintiff. The Network's plan is that all the loans would fail, inevitably, and they would rely on exhorbitant fees and prepayment penalties on the front end to continue to broker new loans, which also helped investors pouring money into the Network believe their balance sheets had sufficient quality assets. In turn, the loans would fail, and the assets seized by sales of Notes or transfers of interest in real property would be used to perpetuate the Network, which preys specifically on individuals who would otherwise not qualify for

conventional loans.

It is believed the common enterprise unofficially gathers as a trade association, or one or more of such associations developed to disguise the real purpose and function of loans originated. In this case, as one example being identified as the National Association of Equipment Leasing Businesses (NAELB), whose goal and mission is to disguise conventional loans as equipment leases and further other schemes to disguise the Network and associations among members and employees of the network. For one example, NAELB's website, http://leasingnews.org/, lists., shares and refers services to help those profiting from the RICO scheme a "Ripoff Removal service", specifically targeted toward a consumer reporting website called RipOffReport.com, where it promises to, among other things: "Here is what you will get with the Special Seven Week Plan: With the seven week plan you get BOTH of the most effective methods to remove your Ripoff Report  1. We will make the copyright infringement petition to Google for them to remove the Ripoff report/s.  AND 2. Use the "Burying" method to push the Ripoff report/s from off of the first pages to where no one will see it and it cannot do any more damage....We will make the petition to Google based on the Berne convention act of 1988 and you will be sent a copy of the Google confirmation with the Google case number showing that the petition has been filed and accepted by Google. This all done in the first week."

   6.  A detailed description of the alleged enterprise for each RICO claim, which shall include:
 a.  The names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise;

**b.** The structure, purpose, function and course of conduct of the enterprise;

**c.** Whether any defendants are employees, officers or directors of the alleged enterprise;

**d.** Whether any defendants are associated with the alleged enterprise;

**e.** Whether plaintiff contends that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise; and

**f.** If any defendants are alleged to be the enterprise itself, or members of the enterprise, an explanation as to whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.

### Count One – Civil RICO 18 U.S.C. §1962(d): Unlawful Collection of Debt, Speer vs Defendant Danjon Capital

The enterprise for this count includes Danjon Capital, Inc., Tina Hampton (its employee), Hogan Hulet PLLC and Stephanie Nicksie, Esq. The structure, purpose, course of conduct and function of the enterprise is to collect unlawful debts, evade state usury laws and conceal the profits and/or true value of assets acquired, and recycle the tangible and intangible proceeds from the racketeering enterprise into future fraudulently originated loans. Tina Hampton is an employee of Danjon Capital, Inc. and an officer with decision-making authority. The named Defendant is the enterprise, and the remainder of the individuals and entities named herein as to this count are associated with it. It is believed that Stephanie Nicksie, Esq. is a passive instrument of the enterprise with insufficient knowledge of it other than the simple mission to attempt to effectuate the unlawful Nevada judgment, and the remainder are perpetrators.

### Count Two – Civil RICO 18 U.S.C. §1962(d): Unlawful Collection of Debt, Speer vs Defendants World Business Lenders and WBE II SPE

The enterprise for this count includes World Business Lenders, LLC and WBE II SPE, LLC, Bank of Lake Mills, NA and unknown individuals yet to be revealed through discovery. The structure, purpose, course of conduct and function of the enterprise is to collect unlawful debts, evade state usury laws and conceal the profits and/or true value of assets acquired, and recycle the tangible and intangible proceeds from the racketeering enterprise into future fraudulently originated loans, and to distort values of those proceeds as listed assets in order to attract investor capital to further the enterprise. The named Defendant is the enterprise, and the remainder of the individuals and entities named herein as to this count are associated with it. Both Defendants named in this Count are perpetrators.

### Count Three – Civil RICO 18 U.S.C. §1962(d): Unlawful Collection of Debt, Speer vs Defendant Hogan Hulet

The enterprise for this count includes Danjon Capital, Inc., Tina Hampton (its employee) and Hogan Hulet PLLC, and Stephanie Nicksie, Esq. and unknown individuals yet to be revealed through discovery. The structure, purpose, course of conduct and function of the enterprise is to collect unlawful debts, evade state usury laws and conceal the profits and/or true value of assets acquired, and recycle the tangible and intangible proceeds from the racketeering enterprise into future fraudulently originated loans. Tina Hampton is an employee of Danjon Capital, Inc. and an officer with decision-making authority. The named Defendant is the enterprise, and the remainder of the individuals and entities named herein as to this count are

associated with it.  It is believed that Stephanie Nicksie, Esq. is a passive instrument of the enterprise with insufficient knowledge of it other than the simple mission to attempt to effectuate the unlawful Nevada judgment. Hogan Hulet is the sole perpetrator in this Count.

### Count Four - Wire Fraud 18 USC §1964(c), Speer vs Defendants Danjon Capital and Tina Hampton

The enterprise for this count includes Danjon Capital, Inc., Tina Hampton (its employee) and unknown individuals yet to be revealed through discovery. The purpose of the enterprise in this count is to fraudulently originate mortgages using a rent-a-bank scheme, setting in motion a loan designed to fail whereby the enterprise would accrue exhorbitant fees and interest well above those permitted by the law of the contract forum (California) and of where the property secured was located (Connecticut). Tina Hampton is an employee of Danjon Capital, Inc. and an officer with decision-making authority. The named Defendants are the enterprise and are the perpetrators, and the remainder of the individuals and entities named herein as to this count are associated with it.

### Count Five - Wire Fraud 18 USC §1964(c), Speer vs Defendants World Business Lenders and WBE II SPE

The enterprise for this count includes World Business Lenders, LLC Bank of Lake Mills, NA and WBE II SPE, LLC and unknown individuals yet to be revealed through discovery. The purpose of the enterprise in this count is to fraudulently

originate mortgages using a rent-a-bank scheme, setting in motion a loan designed to fail whereby the enterprise would accrue exhorbitant fees and interest well above those permitted by the law of the contract forum (Wisconsin), evading the requirements of law required to foreclosuse in the chosen forum of law in the agreement offered and drafted by the Defendants, and of where the property secured was located (Connecticut). The named Defendants are the enterprise, are the perpetrators and the remainder of the individuals and entities named herein as to this count are associated with it as passive instruments.

### Count Six – Civil Rackteering: Laundering of Monetary Instruments 18 USC §1964(c), Speer vs Defendants Danjon Capital, World Business Lenders and WBE SPE II

The enterprise for this count includes Danjon Capital, Inc., Tina Hampton (its employee) and Hogan Hulet PLLC,  World Business Lenders, LLC Bank of Lake Mills, NA and WBE II SPE, LLC and unknown individuals yet to be revealed through discovery. The structure, purpose, course of conduct and function of the enterprise is to collect unlawful debts, evade state usury laws and conceal the profits and/or true value of assets acquired, and recycle the tangible and intangible proceeds from the racketeering enterprise into future fraudulently originated loans. It is also to share referals of victims similarly situated to the Plaintiff. Tina Hampton is an employee of Danjon Capital, Inc. and an officer with decision-making authority.  All the Defendants are perpetrator members of the enterprise, as are unknown individuals. It is believed that Stephanie Nicksie, Esq. is a passive instrument of the enterprise with insufficient

knowledge of it other than the simple mission to attempt to effectuate the unlawful

Nevada judgment. It is believed there are additional perpetrators involved in the

referal scheme for victims similarly situated to the Plaintiff, as well as those whose

roles include hypothecation and transfer of the assets illegally obtained and reinvested

by the enterprise and others who make certain representations and

misrepresentations to potential investor Funders as to the true nature, purpose,

function and intent of the enterprise.


**7. Whether plaintiff contends that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

The pattern for each Count is, as it appears based on the best information and

belief available, its own enterprise, with the exception of Count Six, which involves all

the Defendants as perpetrators and likely a much larger network of Funders,

Associates and Brokers.


**8. The alleged relationship between the activities of the enterprise and the pattern of racketeering activity, including a description of the manner in which the racketeering activity differs, if at all, from the usual and daily activities of the enterprise.**

The deviation in activity is asserted to be, based on the best information and

reasonable belief: (1) the difference of true nature of the transaction itself versus how

the transaction is labeled, documented, classified and represented as to potential

investors, consumers and regulators; and (2)  the difference of true nature of the real

bank/lender versus the purported lenders (in this case, World Business Lenders, LLC and Danjon Capital, Inc. On information and belief, it is asserted that Danjon Capital routinely disguises hard money loans as restaurant equipment leases when the enterprise attempts to collect on the debt and evade applicable usury laws while doing so. It is also asserted that World Business Lenders, LLC, in its doings with victims similarly situated to the Plaintiff, never discloses the true lender at interest.

**9.  The benefits, if any, the alleged enterprise receives or has received from the alleged pattern of racketeering.**

The enterprises for each Count, as a whole, obtain: (1) Notes payable; (2) state court judgments; (3) liens on real property; (4) real property itself; (5) fraudulently induced origination and finders fees, penalties and charges on illegal debts. The Enterprises account for these debts, keep accounting records of the assets acquired and use their accounting of the ledgers and assets to justify potential Funders/Investors to provide money to fuel the creation of new transactions for the Enterprises.

**10. The effect of the activities of the enterprise on interstate or foreign commerce.**

The effect of the Enterprises is to evade federal and state banking laws and regulations, and to originate and collect illegal debts using mail and wire over state lines.

**11. If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information: a. The identity of the individual(s) who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and b. The use or investment of such income.**

Both Danjon Capital, Inc. and World Business Lenders, LLC obtained (1) Notes payable; (2) state court judgments; (3) liens on real property; (4) real property itself; (5) fraudulently induced origination and finders fees, penalties and charges on illegal debts.The latter entity transferred some or all of such income and proceeds to shell entities to inflate their value, conceal the true owners in their equity or evade attempts by regulators, the Plaintiff or those similarly situated to the Plaintiff from recovering them. These proceeds are believed to be used to originate additional fraudulently created transactions and loans. It is reasonably suspected that there may be individuals splitting or earning a commission on finder's and origination fees, including but not limited to Tina Hampton, the real party at interest behind Corporate Funding Network and other individuals and entities whose identifies will be revealed in discovery.

**12. If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

The role of Defendant Hogan Hulet PC, Stephanie Nicksie and counsel is to obtain fraudulent state court judgments to be listed on the books of the enterprises as assets, and to secure title, right and interest in real property by way of wire fraud memorialized by state court judgment. They have the role of an Associate.

The role of Tina Hampton is to control the documents and books setting forth the purported, estimated or actual value of assets of the enterprise. She has an Associate role.

The role of WBE II, SPE, LLC is to conceal the true beneficial owner of the equity of the property acquired by the Enterprises in the counts pertaining to it and/or World Business Lenders, LLC. They have a role as a Broker, as does Danjon Capital, Inc.

The role of Bank of Lake Mills, NA and other entities to be ascertained and identifies is that of a Funder.

**13. If the complaint alleges a violation of 18 U.S.C. § 1962(b), provide the following information: a. The individuals who are employed by or associated with the enterprise; and b. Whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).**

All named Defendants are both associated with and are part of the enterprise. Tina Hampton is employed by Danjon Capital, Inc. All named Defendants are liable.

**14. If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.**

Hampton and Danjon actively conspired to not only collect a fraudulent debt when they involved Hogan Hulet – they conspired to set it up outright by way of offering the restaurant equipment contract as the only way to release funds already agreed to have been disbursed under the Note and Mortgage on 110 McKinnley

Avenue.

World Business Lenders, LLC conspired with Bank of Lake Mills, NA to disguise the true nature of the loan, the true lender, and ultimately with WBE SPE II, LLC and S & G Properties, LLC, conceal the true beneficial owners and whereabouts of the proceeds of the enterprise.

### 15. The alleged injury to business or property.

The Defendants defrauded the Plaintiff, unlawfully acquired her property, slandered title to her property, collected an unlawful debt, sought to collect multiple times on unlawful debt, inflicted an ascertainable loss for the purposes of the Connecticut Unfair Trade Practices Act, damaged the Plaintiff's credit and subjected her to abuse of process, and in the case of Danjon and the Danbury Superior Court action, vexatious litigation.

### 16. The direct causal relationship between the alleged injury and the violation of the RICO statute.

The direct causal relationship begins with the fraudulent origination of the mortgages on both 110 McKinnley Avenue and 526-528 North Main Street, and attempts to memorialize that fraud.

### 17. The damages sustained for which each defendant is allegedly liable.

The Defendants, to the extent each is charged with wire fraud, are liable to the Plaintiff for three times the face value of the Notes she was induced into creating.

They are also liable to the Plaintiff for the full amount of the value of real properties lost.

**18. A description of other federal causes of action alleged in the complaint, if any, and citation to the relevant statutes.**

N/A

**19. A description of all pendent state claims alleged in the complaint, if any.**

The Nevada state court judgment is presently on appeal to the United States Supreme Court.

The World Business Lenders foreclosure action is pending, as matters related to discovery on the second count for a suit on the Note must be heard, and the Plaintiff is pursuing a motion for nonsuit based on failure to answer discovery.

The Danbury superior court action to enforce Danjon's judgment terminated in the Plaintiff's favor.

**20. Any additional information plaintiff feels would be helpful to the Court in processing the RICO claim.**

The Plaintiff will likely need to amend the Complaint a second time as additional parties and actors are revealed through discovery.

Respectfully Submitted,

Elissa Speer
50 Sunnyside Ave
Norwich, CT 06360

Dated this 21st Day of January 2021

## CERTIFICATE OF SERVICE

I, Elissa Speer, certify that a copy of this document was sent to the following counsel of record through the ECF filing system, upon its entry by the clerk:

_Elissa Speer_
Elissa Speer

Jonathan Einhorn, via einhornlawoffice@gmail.com
Eva Kolstad via ekolstad@morrisonmahoney.com
Michael Keller via mkeller@morrisonmahoney.com
Adam Lewis via alewis@oamlaw.com